ROBERTSON, J.
It is well settled law, in this state, that in a sale of personal chattels a full price does not import a warranty as to quality. The vendor is not liable for defects in quality unless he warrants, or makes some fraudulent representation, or, knowing of a latent defect, omits to disclose it.
It is unnecessary to enquire into the correctness of the position taken by the plaintiff’s counsel, that a recovery for a fraudulent representation may be had under the money counts, because there is no evidence in the case tending to show fraud. To constitute fraud the scienter is necessary. It is not sufficient to shqw that false representations were made by the vendor; it must also be shown that, at the time he made them, he knew them to be false; or, at the least, that they were made as statements of facts within' his own knowledge, when in truth he had no knowledge whatever upon the subject.
Here, there is no evidence that any latent defect, known to the vendor, was concealed by him; or that he did not honestly believe that the representations he made were true. If therefore he can be held liable at all, it must be for a breach of warranty, or for a failure to comply with his contract.
To constitute a warranty, no particular form of expression *'is required; an apparent intention to warrant is sufficient. It is enough, if the words used import an engagement on the part of the vendor that the article is what he represents it to be. Any distinct affirmation of quality made by the vendor, at the time of the sale, not as an expression of opinion or belief, but as an assurance to the purchaser of the truth of the fact affirmed, and an inducement to him to make the purchase, is, if accordingly received, and relied on, and acted upon by the purchaser, an express warranty. But no affirmation, however strong, will constitute a warranty, unless it was so intended. If it is intended as a warranty, the vendor is liable, if it turns out to be false, however honest he may have been in making it: but if it is intended as an expression of opinion merely,' or as simple praise or commendation of the article, he is not liable, unless it can be shown that he knew at the time that it was untrue. And in that case, it is inaccurate to say that he is liable for a breach of warranty. His liability arises from the fraud of which he was guiltj’, and should be enforced in an action on the case for deceit.
It is often very difficult to determine whether an affirmation was intended as a warranty, or as a mere expression of opinion. But in this case there is no such difficulty. It is clear that there was no intention to warrant. All that the defendant said and published amounted to no more than simple praise or commendation of the article. The plaintiff too seems not to have relied so much upon the representations of the defendant, as' upon those made by Commodore Jones, and others who gave’certificates.
But it is insisted that the defendant is liable upon an implied warranty.
if the plaintiff, relying on the defendant’s skill and judgment, had applied to him to furnish a manure which would produce such effects as are attributed to *“Chappell’s fertilizer,” without specifying what particular kind of manure he wanted, and the defendant had accordingly furnished an article, which, instead of producing such effects, proved to be entirely worthless, there would be good ground for the proposition that there was an implied warranty from which liability would arise.
If an order is given for an undescribed, unascertained thing, stated to be for a particular purpose, the vendor will be held liable, unless it answers, in a reasonable degree, the purpose for which it was purchased. But where a specific article is *967 ordered and furnished, the law is well settled that, although the purchaser states the purpose to which he intends to applj’ it, there is no implied warranty on the part of the vendor that it is suitable for the purpose ; and he will not, in the absence of fraud, or an express warranty, be held liable, however unfit and defective it may turn out tobe. Chanter v. Hopkins, 4 Mees. & Welsh. 399; Olivant v. Bailey, 48 Eng. C. L. R. 287; Prideaux v. Bunnett, 87 Eng. C. L. R. 613.
In the case of Chanter v. Hopkins, Lord Abinger says, “A good deal of confusion has arisen in many cases on this subject, from the unfortunate use made of the word ‘warranty.’ Two things have been confounded together. A warranty is an express or implied statement of something which the party undertakes shall be part of a contract; and though part of the contract, yet collateral to the express object of it. But in many of the cases, some of which have been referred to, the circumstance of a party selling a particular thing by its proper description, has been called a warranty, and a breach of such contract a breach of warrantjr; but it would be better to distinguish such cases as a non-compliance with a contract which a party has engaged to fulfill; as, if a man offers to buy peas of another, and he sends him beans, he does not perform *his contract, but that is not a warranty: there is no warrantj- that he should sell him peas; the contnict is to sell peas, and if he sells him anj’ thing else in their stead, it is a non-performance of it. So if a man were to order copper for sheathing ships- - that is, a particular copper prepared in a particular manner — if the seller sends him a different sort, in that case he does not complj’ with the contract: and though this may have been considered a warranty, and may have been ranged under the class of cases relating to warranties, yet it is not properly so. How, in the present case the question is, whether or no the order has not been complied with in its terms.” 4 Mees. & Welsh. 404-5.
So in this case, the only proper enquiry is, has the plaintiff’s order been complied with according to its terms, by furnishing him with “Chappell’s fertilizer” — amanare which was well known by that name.
There is no averment in the declaration that a different article from that ordered by the plaintiff was furnished. On the contrary, the allegation there is, that “Chappell’s fertilizer” was bought and delivered, and that it was warranted by the defendant to be of good quality, and reasonably fit for the purposes of the plaintiff; and damages are claimed for a breach of that warranty. The testimony shows that the article called “Chappell’s fertilizer” was delivered by the defendant to the plaintiff: and there is nothing in the record from which it can be inferred that the precise article known by that name was not furnished, except only the fact that the effects resulting from its use, have not been such as “Chappell’s fertilizer” was represented to produce, and may perhaps have generally produced.
It is argued that this of itself is sufficient to show that a spurious article was furnished. That, as against the defendant, it must be taken as true that the article *known by the name of “Chappell’s fertilizer,” which the defendant professedly sold to the plaintiff, was really as valuable as it was said to be, and would, if it had been furnished genuine, have accomplished the results, or at least some of them, which it was said that it would accomplish ; and that the article furnished under that name, having, upon a fair trial, failed to accomplish any of these results, was not genuine and unadulterated, but was, on the contrary, spurious, adulterated, or damaged to such an extent as to be not only not of reasonably good qualitj', but altogether worthless.
If this argument be sound, then the cases which have been cited, and all others of the same class, have been incorrectly decided; for it was as applicable in them, as it is in this case. But its unsoundness is manifest. To assume that an article is not genuine because it does not answer to the representations made respecting it, in effect converts mere representations into warranty, and destroys the rule that the vendor is not responsible for the truth of such representations, unless they are made fraudulently. To hold that the representation gives a right to infer, if the article does not come up to it, that it is spurious, adulterated, or damaged; and to make the vendor liable for not furnishing a genuine, unadulterated, undamaged article, is obviously the same thing in substance as to make him liable rnerelj’ because the representation turns out to be untrue.
There is then no reason to doubt that Ihe plaintiff got the identical article thai he ordered; and that he occupies “the position of a man who has had the misfortune to order a particular chattel, on the supposition that it will answer a particular purpose, but who finds that it will not.”
But it is insisted that if the plaintiff has no other right to recover, he can do so under the money counts, "because of a total failure of the consideration for which he paid his money.
The answer is, that, if he can recover in any mode, upon such a failure of consideration as has been shown to exist in this case, it follows, that whenever an article is bought under the belief (however it may have been induced) on the part of the purchaser, that it is sound and of good quality, and it turns out to be in fact worthless, the rule that the vendor is not liable except for warranty, or for fraudulent representation or concealment, would be entirely abrogated; for, to avoid its effect, the purchaser would only have to declare as for a total failure of consideration.
I can find no ground upon which 1he plaintiff is entitled to relief, even conceding *968 that upon the demurrer to evidence the court should infer that the article purchased by him was intrinsically and wholly worthless — a concession, the propriety of which may well be doubted; for it is by no means certain that this is such a reasonable inference from the testimony that the court ought to make it.
It seems to me to be clear that the judgment should be affirmed.
The other judges concurred in the opinion of Robertson, J.
Judgment affirmed.